540 CMR:    REGISTRY OF MOTOR VEHICLES

540 CMR 2.00:    MOTOR VEHICLE REGULATIONS

Section

2.05: Vehicle Registrations Requirements
2.06: Operator Licensing Requirements
2.07: Year of Manufacture Registration Plates
2.15: Licensing of Operators of School Buses
2.22: Markings on Commercial Vehicles
2.23: Display of Reflectorized License Plates

2.05:  Vehicle Registrations Requirements

(1)  Authority, Purpose and Scope.  540 CMR 2.05 is issued by the Registrar of Motor Vehicles under the authority of  M.G.L. c. 16, § 9 and c. 90, §§ 2 and 31.  In order to promote and protect the public safety, every motor vehicle and trailer operated, pushed, drawn, towed, or remaining in any way shall be in compliance with the registration requirements of M.G.L. c. 90, and 540 CMR 2.05 or 540 CMR 18.00.

(2)  Applications for Registration and Powers of Attorney.  Any person who desires to register a motor vehicle or trailer in the Commonwealth shall complete such application, and provide such information, as required by the Registrar.  The application for registration may be signed on behalf of the applicant by a duly authorized attorney in fact acting under a valid power of attorney, provided the power of attorney or a copy thereof, duly authenticated, is filed with the application for registration

(3)  Definitions.  As used in 540 CMR 2.05, the following terms are defined as follows:

Ambulance, Antique motor car, Auto home, House trailer, Motorcycle, School bus, Semi-trailer, and Trailer, shall have the meaning assigned to those terms in M.G.L. c. 90, § 1.

Apportionable Vehicle, is any motor vehicle which qualifies for registration under the International Registration Plan ["IRP"] authorized by M.G.L. c. 90, § 2, and which the Commonwealth joined effective January 1, 1994, as that Plan may be amended from time to time.

Bus, is any motor vehicle which is designed to transport sixteen or more persons, including the driver, or meets the definition of bus or motor bus under M.G.L. c. 90, § 1.

Commercial Vehicle, is any motor vehicle which is not a private passenger motor vehicle, personal transportation network vehicle, antique motor car, motorcycle, trailer, semi-trailer, auto home, house trailer, taxicab, ambulance, hearse, livery vehicle, bus, school bus, or school pupil transport vehicle, including the following:
(a)  Any vehicle which has a vehicle weight, or curb weight, of more than six thousand pounds, as per the manufacturer's description of said vehicle, unless such vehicle is a sport utility vehicle or passenger van, or a pickup truck or cargo van meeting the definition of private passenger vehicle;
(b)  Any vehicle which has five or more wheels on the ground;
(c)  Any pickup truck or cargo van, owned by a partnership, trust or corporation unless such vehicle meets the definition of private passenger motor vehicle;
(d)  Any pickup truck or cargo van, if on the bed of the vehicle tools, supplies, materials or equipment are transported to or from a job site, or are stored for use at a job site, provided that transportation to or storage for use at a personal project for which no compensation is received shall not be considered in connection with a "job site";
(e)  Any vehicle, if on the roof or sides of the vehicle, tools, supplies, materials or equipment are transported to or from a job site, or are stored for use at a job site, provided that transportation to or storage for use at a personal project for which no compensation is received shall not be deemed in connection with a "job site";

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.05:  continued

(f)  A vehicle which has business advertisements or business markings thereon; provided however that markings limited to the name, address, telephone number, and logo of any corporation whose personal property is exempt from taxation under M.G.L. c. 59, § 5, Clause Third or Tenth shall not be considered business advertisements or business markings for purposes of 540 CMR 2.05;

(g)  A vehicle used for hire to plow;

(h)  A vehicle used for hire to transport or store goods, wares or merchandise, provided that if the vehicle is owned by an individual, has a maximum load carrying capacity of 1,000 pounds or less, and is so used only a part-time basis, such vehicle shall not be deemed a commercial vehicle under 540 CMR 2.05(3)- commercial vehicle(h). "Part-time basis" shall mean that not more than 40% of the total usage of the vehicle is devoted to the transporting or storing of goods, wares or merchandise.

(i)  A vehicle used to transport or store goods, wares or merchandise intended for sale in the ordinary course of the vehicle operator's or owner's business, provided that if the vehicle is owned by an individual, has a maximum load carrying capacity of 1,000 pounds or less, and is so used only a part-time basis, such vehicle shall not be deemed a commercial vehicle under 540 CMR 2.05(3) commercial vehicle(i).  "Part-time basis" shall mean that not more than 40% of the total usage of the vehicle is devoted to the transporting or storing of goods, wares or merchandise.

Hearse, is any vehicle regularly used in the course of business of a licensed embalmer or a licensed funeral director.

Livery Vehicle, is any limousine or other vehicle which is designed to carry fifteen or fewer passengers, including the driver, and carries passengers for hire, business courtesy, employee shuttle, customer shuttle, charter or other pre-arranged transportation, and which vehicle is not required to obtain a taxicab license pursuant to M.G.L.  c. 40, §22.

Private Passenger Motor Vehicle, is any vehicle:

(a)  which has a vehicle weight rating or curb weight of six thousand pounds or less as per manufacturer's description of said vehicle or is a sport utility vehicle or passenger van; or which is a pickup truck or cargo van of the ½ TON, ¾ TON or 1 TON class as per manufacturer's description of said vehicle; or which is a vehicle used solely for official business by any college or university police department whose officers are appointed as special police officers by the colonel of the state police under M.G.L. c. 22C, § 63; and,

(b)  which, if a pickup truck or cargo van, is registered or leased to an individual, and is used exclusively for personal, recreational, or commuting purposes; and,

(c)  which, other than a Personal Transportation Network Vehicle, is not described in elsewhere in 540 CMR 2.05.

The terms pleasure vehicle, passenger vehicle, passenger car, automobile and pleasure passenger vehicle are synonymous with Private Passenger Motor Vehicle as defined herein. For the avoidance of doubt, the term Private Passenger Motor Vehicle shall include, but not be synonymous with, Personal Transportation network Vehicle.

School Pupil Transport Vehicle, is any vehicle which is required to comply with the special equipment and licensing requirement of M.G.L. c. 90, §7D or § 7D½.

Taxicab, is any vehicle which carries passengers for hire, and which is licensed by a municipality pursuant to M.G.L. c. 40, § 22 as a taxicab.

Transportation Network Company is a corporation, partnership, sole proprietorship, or other entity operating in Massachusetts that, for consideration, will arrange for a passenger to be transported from an agreed-upon point of departure to an agreed upon destination by a driver. A Transportation Network Company must hold a valid Transportation Network Company Certificate issued by the Department of Public Utilities or a notice issued by the Department of Public Utilities within the preceding six months certifying that, as of the date of the notice, the Department of Public Utilities is not issuing Transportation Network Company Certificates.

Transportation Network Company Rider or TNC Rider is an individual who uses a

1/18/13                                              540 CMR - 8

540 CMR:    REGISTRY OF MOTOR VEHICLES

Transportation Network Company to arrange transportation from an agreed-upon point of departure to an agreed-upon destination.

Transportation Services are the transportation of a passenger from an agreed-upon point of departure to an agreed-upon destination for consideration.

Transportation Network Company Driver or TNC Driver is an individual who, on behalf of a Transportation Network Company, provides Transportation Services to TNC Riders.

Personal Transportation Network Vehicle is a vehicle that is registered to a Transportation Network Company Driver and used by that Transportation Network Company Driver to provide Transportation Services for a Transportation Network Company.

Vanpool Vehicle, is any vehicle with a seating arrangement designed to carry seven to fifteen adults, including the driver, and is used by seven or more persons commuting on a daily basis to and from work, as classified in M.G.L. c. 63, §§31D through 31F.

(4)  Registration Plates.
    (a)  A Private Passenger Motor Vehicle may display a private passenger registration number plate.
    (b)  Notwithstanding any other provision of 540 CMR 2.05(4), any apportionable vehicle registered under the IRP shall display an APPORTIONED registration number plate.
    (c)  A Commercial Vehicle shall display a COMMERCIAL registration number plate. Each commercial vehicle must have on its registration the registered gross weight evidencing the registered owner's intended loaded weight.

1/18/13

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.05:  continued

(d)  An Ambulance shall display an AMBULANCE registration number plate.

(e)  An Antique Motor Car may display an ANTIQUE registration number plate, or a YEAR OF MANUFACTURE registration number plate issued in accordance with 540 CMR 2.07.

(f)  An Auto Home may display a CAMPER registration number plate. A House Trailer may display either a CAMPER or a TRAILER registration number plate.

(g)  A Bus shall display a BUS registration number plate.

(h)  A Hearse shall display either an HEARSE or a COMMERCIAL registration number plate.

(i)  Subject to 540 CMR 2.05(4)(i)1., 2. and 3., and the provisions of M.G.L. c. 90, § 7D, a Livery vehicle shall display a LIVERY registration number plate, provided that nothing contained in 540 CMR 2.05(4)(i) shall prevent a vehicle that meets the requirements in M.G.L. c. 90 for a registration number plate bearing the International Symbol of Access from displaying such registration number plate.

1.  Any vehicle that meets the definition of Livery Vehicle, including vehicles described in 540 CMR 2.05(4)(i)2. and 3., but which vehicle is used for the transportation of school pupils under M.G.L. c. 90, § 7D, shall display a PUPIL registration number plate.

2.  Any vehicle that meets the definition of Livery Vehicle solely by virtue of the use to which it is put pursuant to a short term rental agreement of not more than seven consecutive days, and 30 days in the aggregate in any calendar year, need not display a Livery registration number plate during such rental period, provided the vehicle is owned by an entity whose regular business is vehicle rental; the vehicle is covered by a liability insurance policy applicable to a vehicle used to transport people for hire; said rental agreement is carried in the vehicle; and the vehicle is properly registered based upon the use to which it was put just prior to the commencement of the short term rental period.

3.  Any vehicle that meets the definition of a Livery Vehicle but is used exclusively to provide transportation in connection with a program of the Commonwealth of Massachusetts Department of Mental Retardation and/or Department of Mental Health may display either a Livery registration number plate or a Passenger registration number plate, provided that if such vehicle displays a Passenger registration number plate it shall not bear any business advertisements or markings thereon, and there shall be maintained in the vehicle, in a readily accessible place for examination by law enforcement officers upon request, written evidence of the relationship with the Department(s) supplied by the Department(s), which writing shall specifically reference the expiration date of the current relationship with the Department(s).

(j)  A Motorcycle shall display a MOTORCYCLE registration number plate.

(k)  A School Bus shall display either a SCHOOL BUS or a BUS registration number plate, except as provided in M.G.L. c. 90, § 7D.  The requirement of 540 CMR 2.05(4)(k) is applicable to all such classified motor vehicles notwithstanding that they otherwise would be eligible to display a COMMERCIAL, LIVERY, TAXI, MUNICIPAL, STATE, AUTHORITY, or other registration number plate.  In case of emergency, a vehicle with a COMMERCIAL, LIVERY, TAXI, PUPIL, MUNICIPAL, STATE or AUTHORITY plate may be substituted as a school bus; provided said substitution may not occur for more than five days in any 12 month period.

(l)  A School Pupil Transport Vehicle shall display a PUPIL registration number plate. The requirement of 540 CMR 2.05(4)(1) is applicable to all such classified motor vehicles notwithstanding that they otherwise would be eligible to display a COMMERCIAL, LIVERY, TAXI, MUNICIPAL, STATE, AUTHORITY, or other registration number plate.  In case of emergency, a vehicle with a COMMERCIAL, LIVERY, TAXI, BUS, SCHOOL BUS, MUNICIPAL, STATE, or AUTHORITY plate may be substituted for a School Pupil Transport Vehicle; provided, said substitution may not occur for more than five days in any 12 month period.

(m)  A Semi-Trailer shall display a SEMI-TRAILER registration number plate.

(n)  A Taxicab shall display a TAXI registration number plate, except that a vehicle which meets the definition of Taxicab, but which vehicle is used for the transportation of school pupils under M.G.L. c. 90, § 7D, shall display a " PUPIL" registration number plate.

(o)  A Trailer shall display a TRAILER registration number plate.

(p)  A Vanpool Vehicle shall display a VANPOOL registration number plate.

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.05:  continued

(q)  Each registration plate issued by the Registrar remains the property of the Registrar. Unless otherwise specifically directed or authorized by the Registrar, a registration plate of a currently issued series of plates or a plate re-issued pursuant to 540 CMR 2.07, which is not displayed on a properly registered motor vehicle or trailer, shall be returned immediately to the Registrar.

(4.5)

(a)  A TNC Driver shall not provide Transportation Services to a Passenger unless a Transportation Network Company has pre-arranged for the TNC Driver to provide Transportation Services to the passenger from an agreed-upon point of departure to an agreed-upon destination.  A TNC Driver shall not solicit or accept on-demand summoning of a ride, otherwise known as "street hail" or "hail pick-up".

(b)  A Transportation Network Commpany shall make available to prospective TNC Riders the method by which the Transportation Network Company calculates fares or the applicable rates being charged and an option to receive an estimated fare.

(c)  A TNC Driver must:

1.  Be at least 21 years of age;
2.  Possess a valid driver's license; and
3.  Possess proof of personal motor vehicle insurance as required under M.G.L. ch. 90 for the Personal Transportation Network Vehicle being used..

(d)  No individual whose operator driving record, asmaintained on behalf of the Merit Rating Board under M.G.L. ch. 6C, Section 57A, contains any of the following traffic violations shall operate a Personal Transportation Network Vehicle:

1.  More than three traffic violations, as defined by the division of Insurance, in the preceding three-year period; or
2.  A major traffic violation, as defined by the Division of Insurance, in the preceding three-year period

(4.75)

(a)  The Department of Public Utilities ("DPU") shall act as the licensing authority to which a Transportation Network Company shall apply for a certificate to provide TNC Services. The DPU may issue such a certificate if the DPU finds that public convenience and necessity reuire that the applicant be allowed to provide Transportation Services.

(b)  The DPU shall have general supervision and regulation of, and jurisdiction and control over Transportation Network Companies as common carriers.

(c)  The DPU shall ensure that, before enabling a Transportation Network Driver to access its digital network, a Transportation Network Company shall:

1.  Conduct, or have a third party conduct, a background check that shall include Criminal Record Information (CORI) and Multi-state/Juris Criminal Records Locator or other similar nationwide database, and National Sex Offender Registry database; and
2.  Conduct, or have a third party conduct, a driving record check.

(d)  The DPU shall further ensure that:

1.  A Transportation Network Company shall not arrange for a passenger to be transported by any Transportation Network Driver who appears on the National Sex Offender Registry or who has a conviction in the past ten years for crimes of violence, sexual abuse, driving under the influence of drugs or alcohol, hit and run, attempting to evade the police, driving with a suspended or revoked license, felony robbery, or felony fraud.

540 CMR:    REGISTRY OF MOTOR VEHICLES

2.  A Transportation Network Company shall maintain appropriate liability insurance.

(e) In the event that the DPU is unwilling or unable to ensure that Transportation Network Companies in general or a Transportation Network Company in particular comply with the above requirements, the Registrar of Motor Vehicles shall have the power to prohibit the operation of some or all Personal Transportation Network Vehicles or take such further action with respect to such vehicles as otherwise authorized by law or regulations.

(5)  Remedies.
   (a)  The certificate of registration of any vehicle that is registered in violation of 540 CMR 2.00, as determined by the Registrar after hearing, shall be subject to revocation under M.G.L. c. 90, § 2; however if the Registrar determines that the continued operation of such vehicle constitutes an immediate threat to public safety then, under M.G.L. c. 90, § 22(a), such revocation by the Registrar shall be without a prior hearing.
   (b)  Any violation of 540 CMR 2.05 is punishable by a fine pursuant to M.G.L. c. 90, § 20, and may result in the suspension of the operator's license or right to operate and/or certificate of registration for up to 30 days pursuant to M.G.L. c. 90, § 22(b).   Confiscation of the registration plate and/or impoundment of the subject vehicle for the reason that the vehicle displays the incorrect type of vehicle registration plate based upon the classifications described in 540 CMR 2.05, is not authorized by 540 CMR 2.05 in the absence of a determination by the Registrar that continued operation of such a vehicle in a particular case would constitute an immediate threat to public safety.
   (c)  Any person who operates a motor vehicle which has no current registration in violation of M.G.L. c. 90, or which bears a registration plate that is assigned to a vehicle or trailer other than the one to which it is attached, or which is the subject of a revoked or suspended registration shall be subject to the penalties set forth in M.G.L. c. 90, §§ 2, 9 and 23, and the registration plate(s) attached to such vehicle shall be subject to immediate confiscation by an officer of the police, or other person authorized by the Registrar.   Any such confiscated plate(s) shall be returned to the Registrar as soon as is practically possible after confiscation.

(6)  Registration Stickers.
   (a)  The Registrar may issue a sticker or decal to validate a registration plate issued under M.G.L. c. 90, § 2.   The owner of the vehicle shall attach such sticker or decal to the upper right hand corner of the rear registration plate, so as to cover any previously attached sticker.
   (b)  Any motor vehicle or trailer registered to the Commonwealth or a political subdivision shall be exempt from the requirement of displaying a registration sticker.

(7)  Electronic Vehicle Registration (EVR) Program.   Participation in the Registry's Electronic Vehicle Registration (EVR) Program authorizing third parties to issue motor vehicle registrations, enter motor vehicle registration data onto the Registry's computer database, and perform ancillary functions, including but not limited to the Distributed Registration Information Vehicle Entry (DRIVE) Program, shall be by permit issued, suspendable and revocable by the Registrar, and subject to such reasonable terms and conditions as the Registrar may prescribe.

(8) (a)  Registration Requirements for Natural Persons (Individuals).  If an applicant for registration of a motor vehicle or trailer is a natural person (an individual), the following information must be provided in addition to any other information the Registrar may require:   The applicant's:
   1.  full name;
   2.  full residential address, including an apartment or unit number, if applicable; and
   3.  date of birth;
      In addition to 540 CMR 2.05(8)(a)1. through 3., at least one of the following four criteria in 540 CMR 2.05(8)(a)4. through 7. must also be provided by the applicant for inspection or recording by the Registrar, unless exempted:
   4.  a valid driver license; or
   5.  a valid Massachusetts' Identification Card issued to the applicant under M.G.L. c. 90, § 8E; or
   6.  the applicant's Social Security Number (SSN); or

540 CMR:    REGISTRY OF MOTOR VEHICLES

7.  other proof of legal residence in Massachusetts.  This may include one or more documents from the Driver's Manual (the edition issued closest in time to the receipt of the application for registration) section on Acceptable Forms of Identification, Documents to Prove Massachusetts Residence.

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.05:  continued

(b) <u>Registration Exemptions for Natural Persons (Individuals)</u>.  As authorized by M.G.L. c. 90, § 2, the Registrar has established exemptions from the requirements in 540 CMR 2.05(8)(a)1. through 7. for nonresident (out-of-state) students; military personnel; senior citizens and disabled persons; and may establish additional exemptions by regulation for other groups if consistent with the provisions in the law.  The following exemptions are incorporated in 540 CMR 2.05(8)(b):

1.  <u>Nonresident Student</u>:  A nonresident enrolled as a student at a school or college in this state who attends school during any period from September 1st of any year to August 31st of the following year and who has a temporary residential address in this state while attending such school, may register a vehicle for personal use that he or she owns from such address without having to provide evidence of a Massachusetts driver license, a Massachusetts ID card (issued under M.G.L. c. 90, § 8E), or provide his or her Social Security Number (SSN) but must have a valid driver license from his or her home state or country if he or she is to be the principal driver of the registered vehicle.

<u>Note</u>: A nonresident student enrolled as a student at a school or college in the Commonwealth who attends school during any period from September 1st of any year to August 31st of the following year and who has a temporary residential address in this state while attending such school is not required to obtain Massachusetts registration plates for a vehicle he or she has brought into the Commonwealth while attending a school or college here if the student completes the nonresident student statement required of nonresident students by M.G.L. c. 90, § 3, including maintaining the required insurance coverage, and files such statement in quadruplicate with the local police where the school or college is located and displays the decal for the applicable academic year provided by the school.  (For purposes of 540 CMR 2.05(8) a "student" is defined as in M.G.L. c. 90, § 1).

2.  <u>Military Personnel</u>:  A person who is an active duty member of the armed forces of the United States whose permanent home is in another state, who is assigned to a base or facility in Massachusetts and who has a temporary residential address in this state, may register a vehicle without having to have a Massachusetts driver license, a Massachusetts ID card or an SSN although he or she must have a valid driver license from his or her home state if he or she is the principal driver; and if not the principal driver and he if she does not have an out-of-state license, he or she must have an SSN or be denied registration.

3.  <u>Senior Citizen or Disabled Person</u>:  A person who is at least 65 years of age and who is a resident of Massachusetts and a person of any age who is a resident of this state and who otherwise meets the definition of a disabled person who would qualify for a handicapped placard or HP plates under Massachusetts law, can register a vehicle that he or she owns without the need to have a Massachusetts driver license, a Massachusetts Identification card or an SSN.

<u>2.06:  Operator Licensing Requirements</u>

(1) <u>Purpose, Scope and Applicability</u>.  540 CMR 2.06 is adopted by the Registrar of Motor Vehicles pursuant to M.G.L. c. 90, §§ 8, 8B and 31, and c. 90F, § 6 to establish uniform rules governing the issuance and use of learner's permits, licenses to operate a motor vehicle, and licenses to operate a commercial motor vehicle.

(2) <u>Definitions</u>.
(a)  The definitions in M.G.L. c. 90, § 1 shall apply to 540 CMR 2.06. With regard to Commercial Driver's License (CDL) matters, if the definitions in M.G.L. c. 90 or 540 CMR 2.06 are inconsistent with the definitions in 49 CFR Part 383, the definitions in 49 CFR Part 383 shall apply.
(b)  The following definitions are also used in 540 CMR 2.06:
<u>CMV</u>. Commercial Motor Vehicle for which a CDL is required to operate.
<u>FHWA</u>. Federal Highway Administration.
<u>License or Learner's Permit</u>.  A driver's license or learner's permit, issued in Class A, B, C, D, or M.

540 CMR:    REGISTRY OF MOTOR VEHICLES

NON-TEXT PAGE

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.06:  continued

Out Of Service Order.  A declaration by an authorized enforcement officer of a federal, state, Canadian, Mexican or local jurisdiction that a driver, a commercial motor vehicle, or a motor carrier operation is out-of-service pursuant to 49 CFR Parts 386.72, 392.5, 395.13, 396.9, or any compatible law, or the North American Uniform Out-of-Service Criteria, as provided in M.G.L. c. 90F, § 1.

(3)  Applications, Fees, Knowledge Tests, and Road Tests - Generally.
   (a)  To obtain, renew, transfer, or upgrade a driver's license or learner's permit, an applicant shall submit an application in a form prescribed by the Registrar, and pay the required fees. The application shall be deemed to include the applicant's response to any request by the Registrar or his agent for information to be included on the applicant's license or learner's permit or otherwise necessary to process the applicant's license or learner's permit.
   (b)  An applicant for a license or learner's permit shall submit satisfactory proof of age, signature and residency within the Commonwealth, in a form acceptable to the Registrar. For purposes of establishing proper identity, an applicant shall also provide his or her social security number, the validity of which the Registrar may confirm with the U.S. Social Security Administration.
   (c)  Prior to the issuance of any license, an applicant must pass both a knowledge test and a driving or skills test as prescribed by the Registrar, and must satisfy the Registry's medical qualification standards as set forth in 540 CMR 24.00, in a manner acceptable to the Registrar. If, at any time before or after the issuance of a license or learner's permit, the Registrar has any reason to believe that a person is physically or mentally incapable of operating a motor vehicle, the Registrar may require satisfactory proof of that person's ability to operate a motor vehicle, including, but not limited to, the successful completion of a competency road test.
   (d)  The driving or skills test must be taken in a motor vehicle representative of the type of motor vehicle which the driver operates or expects to operate.
   (e)  The knowledge and driving or skills tests may be administered by a Registry employee or agent designated by the Registrar to administer such tests or by a third party whom the Registrar has authorized to administer such tests; provided that an independent third party contractor may not give the CDL Knowledge Tests.

(4)  Learner's Permits and Licenses - Generally.
   (a)  Unless prohibited by the state of issuance, an out-of-state operator with a learner's permit may operate in Massachusetts.  Likewise, a Massachusetts learner's permit holder may operate in another state, unless otherwise prohibited.
   (b)  Classes.
      1.  All original operator's licenses and all operator's licenses renewals shall be valid only in accordance with the classes of licenses listed in 540 CMR 2.06. The Registrar shall examine each applicant according to the class of license for which application was made. Each license shall indicate the class to which it is assigned.
      2.  The classes of licenses entitling a licensee to operate motor vehicles or a combination of motor vehicles are as follows:
         Class A:  Any combination of vehicles with a gross combination weight rating (GCWR) of 26,001 or more pounds provided the GVWR of the vehicle(s) being towed is in excess of 10,000 pounds. (Holders of a Class A license may, with any appropriate endorsements, operate all vehicles within Class B, C, and D.)
         Class B:  Any single vehicle with a gross vehicle weight rating (GVWR) of 26,001 or more pounds, or any such vehicle towing a vehicle not in excess of 10,000 pounds GVWR. (Holders of a Class B license may, with appropriate endorsements, operate all vehicles within Class C and D.)
         Class C:  Any single vehicle or combination of vehicles that does not meet the definition of Class A or Class B, but is either designed to transport 16 or more passengers including the driver, or is required to be placarded for hazardous materials under 49 CFR 172.500 or any other federal regulation. (Holders of a Class C license may operate all vehicles within Class D.)
         Class D:  Any single vehicle or combination of vehicles that does not meet the definition of Class A, Class B, Class C, or Class M.
         Class M:  Any motor vehicle defined as a motorcycle in M.G.L. c. 90, § 1.

540 CMR:     REGISTRY OF MOTOR VEHICLES

2.06: continued

3. A Class A, B, or C License shall also be known as a Commercial Driver's License or CDL.
4. Gross Weight Rating.
    a. A vehicle without a plate specifying the GVWR of the vehicle shall contain in a readily accessible place, a written statement specifying the GVWR of the vehicle which must be prepared by the manufacturer of the vehicle or by an authorized dealer who buys and sells such vehicles.
    b. If the registered gross weight or actual gross weight of a vehicle or of a combination of vehicles exceeds its GVWR or GCWR, then the registered gross weight or actual gross weight, whichever is higher, shall be used instead of the GVWR or GCWR to determine what license class is required under 540 CMR 2.06.
(c) Temporary Licenses.   For administrative convenience, the Registrar may issue temporary licenses without a color photograph for reasonably short, defined periods of time, as determined by the Registrar.
(d) Restrictions.
    1. Restrictions on a license shall be coded as follows:
        A.  CMV INTRASTATE ONLY- MEDICAL
        B.  CORRECTIVE LENSES
        C.  MECHANICAL AID (adaptive devices)
        D.  PROSTHETIC AID
        E.  AUTOMATIC TRANSMISSION
        F.  OUTSIDE MIRROR
        G.  LIMIT TO DAYLIGHT ONLY
        H.  HARDSHIP - RESTRICTED HOURS OF OPERATION (hours appear on license)
        I.  LIMITED - OTHER (Jr. operator not valid under age 18 between 1:00 AM and 4:00 AM unless accompanied by a parent or guardian)
        J.  RESTRICTION CARD MUST BE CARRIED
        K.  CDL - LIMIT TO INTRASTATE ONLY
        L.  VEHICLES WITHOUT AIR BRAKES
        M.  CDL - EXCEPT CLASS A BUS
        N.  CDL - EXCEPT CLASS A AND B BUS
        O.  CDL - EXCEPT TRACTOR TRAILER
        P.  USE WITH CERTIFIED DRIVING INSTRUCTOR ONLY
        Q.  MEDICAL WAIVER MUST BE CARRIED
        R.  BI-OPTIC TELESCOPIC LENS
        S.  PROOF OF CURRENT BLOOD SUGAR LEVEL
        W.  CMV INTRASTATE ONLY WITH MEDICAL WAIVER
        Y.  RESTRICT TO 14 PASENGER CAPACITY
        Z.  IGNITION INTERLOCK
    2. For purposes of applying the "L" restriction, a vehicle with vacuum brakes is not a vehicle with air brakes, but a vehicle with "air assist" brakes is a vehicle with air brakes.
    3. Subject to the provisions of 540 CMR 2.06(9)(c)5.b. an "H" restriction may appear on any license or learner's permit.
(e) Reinstatement - Generally.   A Class D or Class M Driver's License which is revoked, suspended, canceled, or downgraded may be reinstated fully or, when applicable, with an "H" restriction signifying a hardship license for employment use only.

(5) Penalties - Generally.
    (a) Violations - Application, Testing and Licensing. In addition to any other penalty provided by law, and in order to insure the integrity of the application, testing and licensing processes, the following provisions shall apply:
        1. Anyone who without lawful authority possesses, in whole or in part, an original version of a driver's license knowledge test, a copy of such test, or information copied from such test, shall be disqualified from holding any class of driver's license or learner's permit for 60 consecutive days.
        2. Anyone who cheats or attempts to cheat on a driver's license knowledge test shall be disqualified from holding any class of driver's license or learner's permit for 60 consecutive days.

540 CMR:     REGISTRY OF MOTOR VEHICLES

2.06:  continued

3.  Anyone who falsifies information to obtain, renew, transfer, or upgrade a driver's license or learner's permit shall be disqualified from holding any class of driver's license or learner's permit for 60 consecutive days. Any driver's license or learner's permit, in any class, issued to a driver who has falsified any information shall be void from the date of issuance.

4.  Any driver's license or learner's permit secured for a driver by an impersonator of that driver, or with the assistance of an impersonator, shall be void from the date of issuance.

5.  Anyone who bribes or attempts to bribe any government official with respect to any driver's license or learner's permit shall be disqualified from holding any class of driver's license or learner's permit for 60 consecutive days.

(b) Violations - Statutes, Rules and Regulations.

1.  A person who operates a motor vehicle or combination of vehicles not included within the class of license issued to him, or without required endorsements, or in violation of license restrictions, or who, while holding a learner's permit operates a motor vehicle in violation of the terms of such permit, or who operates a motor vehicle in violation of an out-of-service order, is deemed to be operating a motor vehicle without being duly licensed and is subject to the penalties for such offense provided in M.G.L. c. 90 and c. 90F, 49 CFR Part 383, and 540 CMR 2.06.

540 CMR:    REGISTRY OF MOTOR VEHICLES

NON-TEXT PAGE

540 CMR:    REGISTRY OF MOTOR VEHICLES

2.06:  continued

2.  In addition to any other penalty provided by law, unless otherwise provided by regulation or statute, the administrative licensing sanction for violating the rules, regulations, and requirements of M.G.L. c. 90, M.G.L. c. 90F, 540 CMR 2.06, or 49 CFR Part 383 shall be a 60 consecutive day disqualification from holding a license, learner's permit, CDL or CDL learner's permit. Any adverse action taken against a license or permit by the Registrar shall not preclude the imposition of criminal penalties or of other civil penalties for the same violation. Likewise, no law enforcement officer is precluded from utilizing criminal law procedure against a driver whose conduct has violated both the criminal law and civil law. At administrative hearings, findings shall be based on a preponderance of the evidence, even if the unlawful conduct is also a violation of a criminal law statute.

3.  In addition to any other penalty provided by law, in a case where an employer is the violator of any provision of 540 CMR 2.06, each agent of the employer who knowingly allowed, required, permitted, or authorized the violation shall be subject to a 60 consecutive day disqualification from holding any class of driver's license or learner's permit.

4.  In addition to any other penalty provided by law, any driver who violates the provision of M.G.L. c. 90, § 25 shall be disqualified from holding any class of driver's license or learner's permit for a period of 60 consecutive days.

5.  In addition to any other penalty provided by law, a driver who violates the provisions of M.G.L. c. 90, § 24B shall be disqualified from holding any class of driver's license or learner's permit for a one year period. This period shall commence upon notice of a criminal conviction. If no prosecution is pending, the disqualification period shall be for 60 consecutive days, which shall commence following an administrative determination that a driver has violated the terms of said statute.

(c)  Notice.  Except for a driver under a 24-hour out-of-service order and except pursuant to M.G.L. c. 90, § 22(a), no driver shall be subjected to any penalties described in 540 CMR 2.00 until reasonable notice is sent to the driver and until there has been a reasonable opportunity for a Registry hearing under 540 CMR 9.00.

(7)  Additional Particular Provisions Applicable to Class M Licenses (Motorcycles).  Skill Test.

(a)  No Registry-conducted motorcycle skills test shall be required of any holder of a Massachusetts Class M Learner's Permit, if the holder has been certified as being qualified by the Governor's Highway Safety Bureau in Massachusetts, and if said holder has successfully completed a course of instruction prescribed by said Bureau. The Registrar shall approve the form of certification to be used under 540 CMR 2.06.

(b)  Applicants taking a Class M Skill Test on a three-wheeled motorcycle with a sidecar will be restricted to such a vehicle.

(8)  Additional Particular Provisions Applicable to School Bus Operators. Any person who operates a school bus, as defined in M.G.L. c. 90, § 1, or a motor vehicle used to transport school pupils under M.G.L. c. 7D, must also comply with all applicable special licensing provisions contained in M.G.L. c. 90 and 540 CMR 2.15.

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.06:  continued

(9) Particular Provisions Applicable to Commercial Driver's Licenses.
  (a)  Federal Regulations. Unless otherwise provided by statute or regulation, all provisions and definitions found in 49 CFR Part 383, and those in M.G.L. c. 90F, § 1 to the extent they are not inconsistent with the federal regulations, are incorporated by reference into 540 CMR 2.06 and, for CDL purposes, are applicable to both intrastate and interstate commerce in Massachusetts. Unless otherwise provided by statute or regulation, any federal regulations referenced in 49 CFR Part 383 or any other provision of Title 49 applicable to a holder of a CDL are also incorporated by reference into 540 CMR 2.06 and, for CDL purposes, are applicable to both interstate and intrastate commerce in Massachusetts.
  (b)  Driving or Skills Tests Waivers.
    1.  The Registrar may prescribe forms for use in determining whether a CMV driving skills test may be waived, and may prescribe other forms for use in the license application process. Such forms shall include, but not are not limited to, application forms and affidavits.
    2.  A driving or skills test described in 49 CFR s 383.113 shall be waived for a CMV operator who meets the conditions set forth in 49 CFR s 383.77, unless the Registrar acts pursuant to M.G.L. c. 90, § 22. This includes waiver of the portion of a CMV skills test related to air brakes if the driver already has a CDL without the "L" restriction.
    3.  Any authority from the FHWA Administrator to waive all testing for a 180-day CDL to be issued to a seasonal farm worker is expressly declined.
  (c)  CDL Learner's Permits and Licenses.
    1.  Eligibility of Out-of-State License Holders. A learner's permit or CDL learner's permit may be issued to the holder of an out-of-state CDL or other out-of-state license.
    2.  Temporary Licenses. The holder of a temporary CDL license assumes the responsibility to verify that all states through which he or she is traveling will honor such a CDL.
    3.  Restrictions.  The holder of a Class "A" CDL with an "O" restriction may not operate a tractor using its fifth wheel to pull a trailer. The holder of a Class "A" CDL with an "O" restriction may operate, but not exclusively, a truck using a fifth wheel to pull a "gooseneck" trailer, and a truck or tractor using a pintle hook to pull a trailer.
    4.  Endorsements.
      a.  Endorsements on a CDL shall be coded as follows:

| | |
|---|---|
| H--HAZARDOUS MATERIALS ("HAZMAT") | T--DOUBLES/TRIPLES |
| N--TANK VEHICLES | X--HAZARDOUS MATERIAL AND |
| P--PASSENGER TRANSPORT | TANK VEHICLES |

      b.  The operator of a truck towing a bus or other vehicle designed to carry 16 or more passengers including the driver, shall not be required to have a Passenger Transport endorsement on any required CDL.
      c.  When a CDL is required to operate a particular vehicle, a tank vehicle "N" endorsement is required on the operator's CDL if the vehicle is designed to transport liquid or gaseous material within a tank or tanks attached to the vehicle or to the chassis of the vehicle. An "N" endorsement is not necessary if the tank has a rated capacity, or if the tanks in the aggregate have total rated capacities under one thousand gallons and if each tank attached to the vehicle or to the chassis of the vehicle is a temporarily attached portable tank, readily removable from the vehicle and filled, re-filled, and accessed only while on the ground or otherwise off the truck.
      d.  The operator of a truck towing a vehicle placarded for hazardous materials or transporting liquid or gaseous material in a tank does not need any endorsements on any required CDL, so long as the operator is engaged in an emergency first move to the nearest appropriate repair facility. For any subsequent moves by the operator of a truck towing any such vehicle, the CDL requirements or hazardous materials endorsements and/or tank vehicle endorsements shall be applicable other than as stated in 540 CMR 2.06(9)(c)4.c. and 540 CMR 2.06(9)(c)4.d ..
    5.  Suspension, Revocation and Disqualification.
      a.  Except when a CDL holder is subjected to a 24 hour out-of-service order, any holder of a CDL which is revoked or canceled may only regain a CDL by passing the CDL Knowledge Tests and CDL Road Test.

540 CMR:    REGISTRY OF MOTOR VEHICLES

2.06:   continued

b.  The holder of a CDL which has been revoked or canceled exclusively on account of state law may, after passing the CDL Knowledge Test, obtain a CDL learner's permit, with or without the "H" restriction, if allowed by applicable state law. After passing the CDL Road Test, the holder of a CDL learner's permit may obtain a CDL and the holder of a CDL learner's permit with an "H" restriction may receive a CDL with an "H" restriction.

c.  A CDL which is revoked or canceled exclusively on account of federal law or on account of both federal and state laws may not be reinstated to any extent as a CDL holder prior to the end of the disqualification period mandated by federal law; therefore, a CDL which is revoked or canceled exclusively on account of federal law, or on account of federal and state laws together, may not be reinstated with an "H" restriction until the federally mandated disqualification period has terminated.

d.  A driver disqualified from holding a CDL may not make an appointment to take the CDL Knowledge Test, take the CDL Knowledge Test, obtain a CDL Learner's Permit, make an appointment to take the CDL Road Test, or take the CDL Road Test unless the driver has received permission to do so from the Registrar.

e.  When a driver is disqualified from holding a CDL but is qualified to hold a Class D License or Class M License, the driver's CDL may be downgraded to a Class D or Class M License.

f.  To the extent a driver's privilege to hold a passenger vehicle Class D license is suspended, revoked, or canceled, the driver may neither obtain a CDL nor retain a previously issued CDL.

g.  The Registrar shall enact and enforce through licensing sanctions the disqualifications prescribed in 49 CFR § 383.51(b).

h.  The Registrar shall give full faith and credit to the disqualification of commercial motor vehicle drivers by other states.

(d)  Special CDL Exemptions.

1.  Intrastate Commerce. With respect to CDL qualifications, a driver engaged only in intrastate commerce may utilize the exemptions provided in 540 CMR 14.04(1)(a) and (b).

2.  Operators of Emergency and Firefighting Equipment. Drivers with a Class D License may operate emergency or fire equipment necessary to the preservation of life or property, or the execution of emergency governmental functions. Unless federal guidelines expressly provide otherwise, such exempt drivers shall include:

a.  a civilian mechanic operating emergency or fire fighting apparatus in the employ of a volunteer or paid fire organization, provided the civilian mechanic is subject to the direction and control of a fire department official regarding the means used to accomplish particular objectives;

b.  a member of a volunteer or paid fire organization, when responding to an emergency or otherwise performing official duties;

c.  an agent of Federal, State or local government operating such equipment in a search and rescue function or as part of disaster relief activities, provided the equipment is government owned or controlled; and

d.  the operator of an antique fire engine.

3.  Farmers.  Class D License holders may operate farm vehicles which are controlled by a farmer and operated by that farmer, his employees, or his family; used to transport agricultural products, farm machinery, and/or farm supplies to or from the farmer's farm; not used in the operation of a common or contract carrier; and used within 150 air miles of the farmer's farm. Drivers of vehicles used in lumber operations or nursery operations are considered part of a "tree farm" operation. The term "farmer" also includes one in the business or raising horses, poultry, hogs, or bees. This exemption applies to a farm vehicle of any weight rating, to a farm vehicle required to be placarded for hazardous materials, and to a farm vehicle designed to transport 16 or more persons including the driver.

540 CMR:    REGISTRY OF MOTOR VEHICLES

2.06:    continued

4.   Military.   Military personnel may operate military vehicles for military purposes without any license under 540 CMR 2.06. The lawful operation of any vehicle owned or controlled by the United States Department of Defense is presumed to be a military vehicle operated for a military purpose. Such personnel include any active duty military personnel, and members of the reserves and national guard on active duty including personnel on full-time national guard duty, personnel on part-time training, and national guard technicians (civilians who are required to wear military uniforms and are subject to the code of military justice). Unless federal guidelines expressly provide otherwise, such personnel shall also include civilian technicians who are either military reservists or members of the National Guard and who operate a National Guard vehicle in a National Guard military uniform. Such civilian technician need not be subject to the code of military justice when operating the National Guard vehicle in order to operate lawfully.

5.   Recreational Vehicle Operators.   Any vehicle operated solely as a personal or family conveyance for recreational purposes may be operated with a Class D License. To be exempt from CDL requirements, the vehicle must be used exclusively to transport family members or personal friends and/or their effects.

6.   Off-Road Construction Equipment Operators.   A CDL is not required of a skilled mechanic at a construction site operating off-road motorized construction equipment which by its design, appearance, and function is not intended for use on a public way. Such equipment may also be operated and driven without a CDL:

   a.   to and from a construction site, on public ways under the immediate direction of a police officer; and
   b.   on a part of the public way which is under construction or re-construction and which is lawfully marked off so as to detour the general public. Otherwise, such equipment on the public way may only be operated and driven by the holder of a driver's license in the appropriate class for such equipment. Off-road motorized construction equipment includes, but not exclusively, motorscrapers, backhoes, motorgraders, compactors, excavators, tractors, trenchers, and bulldozers.

7.   Waivers.   Unless otherwise provided by statute or regulation, all CDL waivers hereafter granted by the FHWA Administrator are, to the same extent, granted by the Registrar.

8.   Effect.   Any written opinion or regulation of the Registrar to the effect that a certain person or certain category of persons is exempt from CDL requirements shall have effect in another state, provided the other state honors the exemption, unless federal guidelines require otherwise.

(e)   Other CDL Provisions.

   1.   The Registrar is the official to receive notice of convictions for driver violations under 49 CFR § 383.31(a).
   2.   Alcohol or Other Drugs.
      a.   Each holder of a CDL or CDL learner's permit, including, but not exclusively, anyone engaged in operations described in either 49 CFR § 390.3(f) or 49 CFR § 391.2, is subject to the provisions of M.G.L. c. 90F, § 10 and 49 CFR § 392.5.
      b.   Any test or tests of blood, breath, or urine, administered to the operator of a commercial motor vehicle as required by a law enforcement officer and aimed at determining that person's alcohol concentration or the presence of other drugs, shall be administered both in the enforcement of state laws and in the enforcement of 49 CFR § 383.51(b)(2)(i)(A), § 383.51(b)(2)(i)(B), and § 392.5(a)(2).
      c.   Each holder of a CDL containing an "intrastate only" restriction consents, by exercising said CDL, to a motor carrier's testing for the presence of alcohol or other controlled substances if so required by 540 CMR 14.03.

(10)   Waiver.   The Registrar reserves the right to waive any requirement of 540 CMR 2.06 in the public interest, except to the extent that such waiver would violate any state or federal regulation or statute.

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.07:  Year of Manufacture Registration Plates

(1) Authority, Purpose and Scope.  540 CMR 2.07 is issued by the Registrar of Motor Vehicles pursuant to M.G.L. c. 90, §§ 6A and 31, to allow the display of Year of Manufacture registration plates on antique motor cars under certain circumstances and conditions, as determined by the Registrar.

(2) Definitions.  In 540 CMR 2.07, the following definitions apply:

Antique Motor Car: a motor vehicle that meets the definition of antique motor car in M.G.L. c. 90, §1.

Year of Manufacture Registration Plate: a registration plate originally issued by the Commonwealth in the exact year of manufacture of the antique motor car to which it is proposed to be attached under 540 CMR 2.07.  If no registration plates were issued in a particular year, Year of Manufacture Registration Plate shall mean a registration plate originally issued in a prior year and originally approved by the Commonwealth for use in the year of manufacture of the antique motor car to which it is proposed to be attached under 540 CMR 2.07.

(3) Use of Year of Manufacture Registration Plates.  In the discretion of the Registrar, a Year of Manufacture registration plate may be issued for display on an antique motor car in place of an Antique registration plate, in the following circumstances:
    (a)  The owner of the antique motor car shall submit to the Registry a request for issuance of a Year of Manufacture registration plate on a form prescribed by the Registrar.
    (b)  The owner shall physically present the Year of Manufacture registration plate to the Registrar or his or her designee for approval, and, the Registrar or the designee shall find, in his or her judgment, that the plate:
        1.  contains a combination of alphanumeric characters that is compatible with the data system then in use by the Registry;
        2.  is in good repair and condition, with its numbers and markings clearly legible; and
        3.  is of sufficiently distinctive appearance that it would not likely be confused with any currently issued registration plate. A plate bearing a combination of alphanumeric characters than has already been approved as a Year of Manufacture registration plate shall not be deemed to be sufficiently distinctive in appearance.
    (c)  The Registrar may, but need not, approve a Year of Manufacture registration plate for display on an antique motor car of a different type than that for which the registration plate was originally issued (e.g. a truck plate approved for display on an automobile).
    (d)  Notwithstanding the fact that during a particular year of manufacture it was the practice to issue two registration plates, the Registrar may in his or her discretion authorize the display of only one Year of Manufacture registration plate, if only one such plate is available and found to meet the standards set forth in 540 CMR 2.07(3)(b).  Such plate or plates, as the case may be, shall be displayed in accordance with the provisions of M.G.L. c. 90, § 6.

(4) Registration Number and Decal.
    (a)  If the Registrar approves a request for issuance of a Year of Manufacture registration plate, then the registration number assigned to the subject antique motor car shall comprise the combination of numbers and letters shown on the Year of Manufacture registration plate, together with a unique identifier, to be determined by the Registrar, which will distinguish the letter and number combination as a Year of Manufacture registration number.  The issued registration plate for the antique motor car shall be the Year of Manufacture registration plate.
    (b)  The registration decal issued in connection with an approved Year of Manufacture registration plate need not be affixed to the Year of Manufacture registration plate for which it is issued, provided the decal is at all times carried in the antique motor car in a readily accessible place, for display upon request.

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.07:  continued

(5) Surrender of Registration Plate.  Pursuant to the provisions of M.G.L. c. 90, and 540 CMR 2.05(4)(q), in the event of revocation or suspension of the registration assigned to an antique motor car bearing a Year of Manufacture registration plate, the Year of Manufacture registration plate shall be surrendered to the Registrar in like manner as any other issued registration plate.  If the registration is terminated under circumstances other than suspension or revocation, the Registrar in his discretion may elect not to require the return of the Year of Manufacture registration plate.

(6) Procedures.  The Registrar may adopt such further policies and procedures as in the Registrar's judgment are necessary or desirable to implement 540 CMR 2.07.

## 2.15:  Licensing of Operators of School Buses

(1) Purpose, Scope and Applicability.  540 CMR 2.15 establishes uniform standards and requirements for the issuance of a Registry of Motor Vehicles license to operate a school bus pursuant to M.G.L. c. 90, § 8A. Such license to operate a school bus is also referred to as a school bus operator's certificate.  The Registry of Motor Vehicles may authorize the Department of Public Utilities to serve as its agent for purposes of processing school bus operator's certificates, provided that the standards contained in 540 CMR 2.15 shall be applicable.

(2) General Qualifications.  A person seeking a school bus operator's certificate shall submit such application and additional information as may be required by the Registrar of Motor Vehicles. In addition to satisfying all requirements established by M.G.L. c. 90, § 8A, in order to obtain and retain a school bus operator's certificate, a person must:
   (a)  be the holder of a valid Massachusetts license issued under authority of M.G.L. c. 90, § 8.
   (b)  be competent by reason of driving performance and experience or training, to operate properly and safely the type of school bus which the person will be required to operate;
   (c)  be familiar with the law, rules and regulations pertaining to the operation of motor vehicles;
   (d)  be able to read, write and speak the English Language;
   (e)  pass a skills test in which the person operates a school bus, equipped as provided in M.G.L. c. 90, § 7B and 540 CMR 7.00, over a definite course or courses designated by the Registrar of Motor Vehicles, or his designee. As part of the test, the operator shall be required to demonstrate his ability to operate the school bus and the safety equipment and devices with which said bus is equipped; and the ability to start, stop, back, park the bus and to turn the bus around in a safe and proper manner, or perform any other movement as required by the Registrar of Motor Vehicles, or his designee; and
   (f)  satisfy the medical qualifications in 540 CMR 2.15(3).

(3A) Medical Qualifications for Licensing of Operators of School Buses and Operators of School Pupil Transport Vehicles (Class 7D & 7D½).  The provisions of 540 CMR 2.15(3A) shall apply to all applicants for a school bus operator certificate or school pupil transport vehicle class 7D and 7D½ license.   The terms used in 540 CMR 2.15(3A) shall have the same meaning as defined in 540 CMR 24.00.   In order to be eligible for a school bus operator's certificate and school pupil transport vehicle license (class 7D and 7D½), a person shall:
   (a)  have a distant visual acuity of at least 20/40 (Snellen) in each eye, with or without corrective lenses (excluding bioptic telescopic lenses); a combined horizontal peripheral field of vision of not less than 120°; and the ability to distinguish the colors red, green, and amber.  Persons requiring corrective lenses shall wear properly prescribed lenses at all times when operating a school bus or school pupil transport vehicle; and
   (b)  first perceive a forced whispered voice in the better ear at not less than five feet with or without the use of a hearing aid or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1000 Hz, and 2000 Hz with or without a hearing aid when the audiometric device is calibrated to American National Standard (formerly ASA standard); and
   (c)  have an $O_2$ saturation rate of greater than 88%, at rest or with minimal exertion, with or without supplemental oxygen; and

540 CMR:    REGISTRY OF MOTOR VEHICLES

2.15:  continued

(d)  have no current diagnosis of epilepsy; and

(e)  not be classified according to the American Heart Association (AHA) functional classification system as an AHA functional Class III or IV heart patient or shall not have had an implanted cardiac defibrillator (AICD) placed for a "sudden death event." Such applicants shall not be eligible for an active school bus operator's certificate or class 7D or 7D½ school pupil transport vehicle learner's permit or license until a six-month period has elapsed during which there is documentation of no episodes of appropriate device firing. Individuals for whom the AICD is placed purely for prophylactic reason will not be subject to this "waiting" period.  However, if such individuals are determined to have an AICD that appropriately "fires", they will be considered the same as an individual who has had a "sudden death event" and be subject to the six-month period during which there is documentation of no episodes of appropriate device firing; and

(f)  have no loss of foot, leg, hand, or arm likely to interfere with safe driving; have no impairment of use of foot, leg, fingers, hand, or arm likely to interfere with safe driving; or have no other physical condition or limitation likely to interfere with safe driving.

(g)  have no mental, nervous, organic, or functional disease likely to interfere with safe driving; and

(h)  have no contagious or communicable disease; and

(i)  not be addicted to the use of narcotics or habit forming drugs or tranquilizers or stimulants or the excessive use of alcoholic beverages or liquors.

(j)  if currently diagnosed as having diabetes mellitus, have never had a hypoglycemic episode or spell, as certified by a physician, and not be insulin dependant, subject to the specific exceptions identified in 540 CMR 2.15(3A)(j) "Exceptions".

Exceptions:  Diabetic licensees or applicants who use insulin to control their diabetes or who have had a serious hypoglycemic event are eligible to receive a school bus operator certificate or class 7D or 7D½ school pupil transport vehicle learner's permit or license upon meeting the following conditions:

1.  The individual possesses a currently valid operator's driver license;

2.  The individual is not diagnosed with "hypoglycemic unawareness," defined as the inability to recognize the early symptoms of hypoglycemia such as sweating, anxiety, forceful heartbeat, light-headedness, and/or confusion;

3.  The individual has not had within the last three years a "serious hypoglycemic event," defined as a hypoglycemic episode or event so severe that it interfered with on-going activities or it required the assistance or aid of another person, as certified by a Massachusetts board certified or board eligible endocrinologist.

4.   The  individual  provides  a  Massachusetts  certified  or  board  eligible endocrinologist with a complete written medical history including, but not limited to, the date insulin use began, all hospitalization reports, consultation notes for diagnostic examinations, all results of studies conducted for diabetics, and follow-up reports and reports of any hypoglycemic insulin reactions within the last three years.

5.   The individual is examined by a Massachusetts board certified or board eligible endocrinologist every six months and a complete School Pupil Transport Diabetes Medical Evaluation Form, issued by the Registry of Motor Vehicles, is:

   a.  certified by the examining endocrinologist;

   b.  signed by the license applicant and

   c.  submitted to the RMV every six months.

6.   The endocrinologist signed statement on the School Pupil Transport Diabetes Medical Evaluation Form certifies the following medical determinations:

   a.  The endocrinologist is familiar with the applicant's medical history for the past three years either through actual treatment over that time or through consultation with a physician who has treated the applicant during that time.  Review of a complete written medical history for the past three years may be substituted for actual consultation with the other physician;

   b.  If applicable, the applicant has been on a stable insulin regimen to control his/her diabetes on the date of application;

   c.  The applicant does not have severe serious hypoglycemic episodes events or altered consciousness that interfered with on-going activities or required the assistant assistance of another person to regain control;

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.15:  continued

d.  The applicant does not have hypoglycemic unawareness or the inability to recognize the early symptoms of hypoglycemia such as sweating, anxiety, forceful heartbeat, and light-headedness and/or confusion;

e.  Within the past three years, the applicant has not had an hypoglycemic reaction, at any time, that resulted in any change in mental status that would have been, in the examining endocrinologist's opinion, detrimental to the safe operation of a school bus or school pupil transport vehicle;

f.  Complications of the applicant's diabetic condition, such as neuropathy, visual impairment or cognitive impairment will not adversely affect his or her ability to operate a school bus or school pupil transport vehicle;

g.  The applicant has been educated in diabetes and its management, thoroughly informed of and understands the procedures which must be followed to monitor and manage his/her diabetes and the procedures that should be followed if complications arise by a National Standard for Diabetes Self-Management Education Program; and

h.  The applicant has the ability and has demonstrated willingness to properly monitor and manage his or her diabetes *including* signing the School Pupil Transport Diabetes Medical Evaluation Form, as witnessed by the treating endocrinologist, that the applicant understands his/her medical regime and agrees to comply with all criteria concerning eligibility for the 7D, 7D½ license or School Bus Certificate.

7.  The following special conditions are required for the issuance of a 7D, 7D½ license or School Bus Certificate to any driver who uses insulin to control their diabetes. Each driver must:

a.  Carry, use, and record, in a log, the readings from a portable self-monitoring blood-glucose device (SMBG) that is equipped with a computerized memory including date and time of test.  Blood glucose monitoring must be performed immediately prior to driving and every four hours thereafter while on duty.  Paper tapes generated by SMBGs having a printing capability may be used in *lieu* of a log prepared by the driver.  Log records of blood glucose values (with time and date) must be available to law enforcement or authorized registry personnel upon request.  Log records must also be submitted to the certifying endocrinologist for each renewal application;

b.  Carry upon your person at all times and use, as necessary, a source of rapidly absorbable glucose;

c.  Not operate a school bus or a school pupil transport vehicle unless blood glucose measures within the target parameters of 80 and 350;

   i.  If blood glucose measures between 60 and 79 then operator cannot drive operate a school bus or school pupil transport vehicle until blood glucose measure is within the target parameters defined in 540 CMR 2.15(3A)(j)7.c.;

   ii.  If blood glucose measures below 60 then the operator cannot operate a school bus or school pupil transport vehicle until certified as "safe to operate" by a Massachusetts board certified or board eligible endocrinologist;

   iii.  If blood glucose measures 350 or more then the operator cannot  operate a school bus or school pupil transport vehicle until certified as "safe to operate" by a Massachusetts board certified or board eligible endocrinologist;

d.  Report and surrender his/her 7D, 7D½ license, permit or School Bus Certificate immediately to the Registry of Motor Vehicles if a serious hypoglycemic event should occur;

e.  Submit a glucose log within 15 days of a serious hypoglycemic event to the treating endocrinologist;

f.  Acknowledge every six months through signature and in the presence of their treating endocrinologist that he or she understands and will adhere to the special conditions of his or her 7D, 7D½ license, permit or School Bus Operator Certificate.

   The Registrar of Motor Vehicles, or his or her designee, may require such evidence of satisfaction of the medical qualification criteria as he or she deems appropriate, or may modify these standards as an individual case may require.

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.15:   continued

(3B)   Medical Qualifications Applicable to Existing School Bus Operator's and School Pupil Transport Operator's Licenses.   Except for those applicants or licensees who are diagnosed as diabetic and who use insulin to control their diabetes and except for those applicants or licensees who have had a serious hypoglycemic event as defined in 540 CMR 2.15(3A)(j), an individual who is unable to meet the medical qualification standards of 540 CMR 2.15(3A), but who held a valid school bus operator certificate or class 7D or 7D½ school pupil transport license as of the effective date of 540 CMR 2.15 (3A), shall be eligible to retain or renew such certificate or license, provided:

(a)   he or she satisfies the following medical qualification standards:

540 CMR: REGISTRY OF MOTOR VEHICLES

NON-TEXT PAGE

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.15:  continued

    1.  In order to be eligible for a school bus operator's certificate, a person shall:

      a.  have no loss of foot, leg, hand, or arm or impairment of use of foot, leg, fingers, hand, or arm, or other physical condition or limitation likely to interfere with safe driving;

      b.  have no mental, nervous, organic, or functional disease nor any heart disease likely to interfere with safe driving;

      c.  have no contagious or communicable disease;

      d.  have visual acuity, either without lenses or by correction, of at least 20/40 (Snellen) in one eye and 20/100 in the other eye; form field of vision in the horizontal meridian of not less than a total of 140; reading ability with both eyes together of at least 20/40 corrected; and the ability to distinguish the colors red, green, and yellow.  Persons requiring correction by lenses shall wear properly prescribed lenses at all times when operating a school bus.

      e.  have hearing of not less than 10/20 in the better ear, for conversational tones without a hearing aid; and

      f.  not be addicted to the use of narcotics or habit forming drugs, or tranquilizers or stimulants or the excessive use of alcoholic beverages or liquors.

  The Registrar of Motor Vehicles, or his designee, may require such evidence of satisfaction of the medical qualification criteria as he deems appropriate.

    2.  In order to be eligible to operate a class 7D or 7D½ school pupil transport vehicle, an individual must:

      a.  have to ability to hear normal conversational sounds;

      b.  not have a loss of foot, leg, hand, or arm or other physical defect or limitation likely to interfere with safe driving;

      c.  be free from any mental, nervous, heart, organic, or functional disease likely to interfere with safe driving;

      d.  be free from addiction to use of narcotics, or habit forming drugs, alcoholic beverages or liquors;

      e.  not have a "G" restriction (limit to daylight only) on the driver's license.

  (b)  he or she provides a certification from his or her physician, that, to a reasonable degree of medical certainty, the individual is medically qualified to safely operate a school bus or school pupil transport vehicle, as the case may be, and perform the other functions associated with such operation; and

  (c)  the Registry has no other cause to believe, based upon the individual's driving history or otherwise, that the individual cannot safely operate such motor vehicle.

(4)  Evidence of Certification; Suspension, Revocation of Certificate.

  (a)  While operating a school bus, operators shall have on their person, or in some easily accessible place, their school bus operator's certificate, in addition to their motor vehicle operator's license. On the request of a police officer or other person authorized by the Registrar of Motor Vehicles, a school bus operator shall permit such officer or person to examine the school bus operator's certificate in hand, and shall sign his or her name if requested to do so by such officer or person.

  (b)  The Registrar of Motor Vehicles may suspend or revoke a school bus operator's certificate in accordance with the provisions of M.G.L. c. 90, § 8A. The suspension or revocation of the motor vehicle operator's license of any holder of a school bus operator's certificate shall result in the automatic revocation of the school bus operator's certificate. Any person whose school bus operator's certificate is suspended or revoked shall immediately surrender the certificate to the Registrar of Motor Vehicles, or his designee.

540 CMR:   REGISTRY OF MOTOR VEHICLES

2.22:  Markings on Commercial Vehicles

(1)  Marking.  The owner of every motor truck used for the transportation of goods, wares or merchandise for hire, gain or reward, shall have the owner's name marked on the truck, to be plainly visible from each side or from the front and rear of the vehicle, provided that motor trucks operated under a lease of more than 30 days shall display either the name of the owner or the lessee, and may display both.  For the purpose of 540 CMR 2.22(1), Motor Truck shall mean any motor vehicle specially designed or equipped to transport personal property over the ways of the Commonwealth and which has a maximum load carrying capacity of over 2,000 pounds, and which is not a Private Passenger Motor Vehicle under 540 CMR 2.05.  To the extent there is any conflict between 540 CMR 2.22 and any federal regulation pertaining to markings on commercial motor vehicles, the federal regulation shall control.

(2)  Penalty.  The penalty for a violation of 540 CMR 2.22 is set forth in M.G.L. c. 90, § 20.

2.23:  Display of Reflectorized License Plates

(1)  On or after August 1, 1969, no reflectorized number plate issued by the Registrar of Motor Vehicles and mounted on any motor vehicle or trailer shall be covered with any glass, plastic or similar material if such material reduces the legibility or substantially diminishes the reflective qualities of such plate.

(2)  Any such number plate covered with any glass, plastic or similar material which reduces the legibility or substantially diminished the reflective qualities of such plate shall be deemed not to be maintained in good order, and in violation of the provision of said M.G.L. c. 90.

(3)  Nothing contained in 540 CMR 2.00 shall be construed to prohibit the use of any metal or other frame covering, the border of any such reflectorized number plate so long as such frame does not cover or obscure in any manner the register number or any other words, symbols or numbers lawfully imprinted on or affixed to such number plate.


REGULATORY AUTHORITY

540 CMR 2.00:  M.G.L. c. 90.



(PAGES 23 THROUGH 30 ARE RESERVED FOR FUTURE USE.)